## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| TONI JACKSON, individually and on behalf of all others similarly situated, | ) ) ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) ) |
| v. | ) Case No.: 3:21-cv-848 |
| JERSEY COMMUNITTY HOSPITAL | ) ) ) |
| & | ) ) |
| CONSUMER COLLECTION MANAGEMENT, INC. | ) ) ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Toni Jackson, individually and on behalf of all others similarly situated, by and through the undersigned counsel, and for her Complaint against Defendants, Jersey Community Hospital ("JCH") and Consumer Collection Management, Inc. ("CCM" and together with JCH, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

### JURISDICTION

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d).

2. Venue is proper because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

1

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Fidelity, a part of Jersey County, Illinois 62030.

6. The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Fidelity, a part of Jersey County, Illinois 62030, making this a proper venue under 28 U.S. Code § 1391(b)(2).

7. Defendant JCH, an Illinois corporation headquartered in Jerseyville, Illinois practices is incorporated and domiciled in this venue and thus subject to this Court's jurisdiction.

8. Defendant JCH operates as a medical provider, wherein individuals receive medical attention at its facilities and JCH then charges insurance and individuals.

9. Defendant CCM, a Missouri corporation headquartered in St. Louis, Missouri practices as a debt collector throughout the country, including Illinois.

10. Defendant CCM is registered to transact business within the state of Illinois and has a registered agent within the state, in this district and venue.

11. Defendant CCM attempts to collect alleged debts throughout the state of Illinois, including in Fidelity city and Jersey county.

12. Defendant CCM has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

13. Defendants have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in the city of Fidelity and Jersey county and Defendant CCM attempts to collect alleged debts throughout the state of Illinois.

14. As Defendant CCM knowingly attempted to collect on a debt allegedly incurred in Jerseyville, Illinois, it and thus has sufficient minimum contacts with this venue, venue is additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

15. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

16. Defendants' collection activities violated the FDCPA.

17. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

18. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

19. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy

injury-in-fact requirement).

20. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

21. Plaintiff, Toni Jackson (hereafter "Plaintiff"), is a natural person currently residing in the state of Illinois.

22. Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

23. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

24. Defendant JCH is an Illinois company engaged in the business of selling medical services in this state with its principal place of business located at 400 Maple Summit Road, Jerseyville, Illinois 62052.

25. JCH is engaged in the business of a selling medical services by billing insurance and individuals for purported services.

26. Defendant CCM is a Missouri company engaged in the business of collecting debts, using mail and telephone in this state with its principal place of business located at 2333 Grissom Drive, Suite 100, St. Louis, Missouri 63146.

27. CCM is engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

28. CCM regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

29. Defendant CCM is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

30. Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC are "consumer reporting agencies that compile and maintain files on consumers on a

nationwide basis" as defined by 15 U.S.C. § 1681a(p). These companies regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

    a. Public record information; and

    b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

31. Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than CCM.

32. On or about August 28, 2018, Plaintiff went to Defendant JCH's facility for medical treatment.

33. At that time, Plaintiff had Medicaid insurance through Meridian Health Insurance.

34. Plaintiff provided Defendant JCH with her Medicaid insurance information at the time of treatment.

35. JCH then set the alleged balance to collections without attempting to procure the funds from Plaintiff's Medicaid.

36. Medicaid then paid the entire remaining balance on or about May 2, 2019.

37. At that point in time, Plaintiff no longer owed any monetary funds to JCH.

38. However, JCH then continued to attempt to procure payment from Plaintiff for the amount that had already been paid in full.

39. On a date better known by Defendants, JCH contracted with CCM to attempt to collect on these un-owed funds.

40. The alleged debt was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

41. CCM did not send Plaintiff any notices in the mail, despite JCH having Plaintiff's proper address.

42. CCM then began reporting on Plaintiff's credit, without first sending Plaintiff an initial dunning letter.

43. Voluntary credit reporting is a "communication" as defined by 15 U.S.C. § 1692a(2).

44. This practice by CCM, referred to as "debt parking," violates the FDCPA. See <u>Federal Trade Commission v. Midwest Recovery Systems, LLC et. al</u>, Case 4:20-cv-01674, ECF Doc. 2, (E.D.Mo. November 25, 2020).

45. Moreover, Plaintiff discovered these errors on her credit while attempting to procure a mortgage for a home on or about March 2021.

46. This improper reporting forced Plaintiff to suffer a loss in the form of a home loan.

47. After failing to obtain a home loan, Plaintiff informed CCM that the alleged debt was improper, as her Medicaid insurance paid the required and contractual amount.

48. CCM failed to remove the alleged debt.

49. Plaintiff then had her Medicaid representative explain to CCM that these alleged debts were improper because Medicaid had paid the balance in full based on its contractual obligations.

50. CCM again persisted in reporting to Plaintiff's credit.

51. Defendant CCM knew, or should have known, that the alleged debt was incorrect in its entirety.

52. Once Plaintiff disputed the debt, Defendant CCM was required to mark the account as disputed if it chose to voluntarily report to the Credit Reporting Agencies.

53. Despite the alleged debts being completely invalid, CCM was voluntarily reporting a collection account on Plaintiff's credit report with the credit reporting agencies.

54. CCM's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

55. Even after Plaintiff attempted to dispute the alleged debt, it continued to report without a dispute notation.

56. The updated credit report did not contain updated account information and failed to delete the invalid and incorrect alleged debt.

57. That CCM furnished false information to the credit reporting agencies regarding Plaintiff's account despite having actual notice that the accounts were incorrect, and without notifying them the account had been disputed by consumer.

58. That CCM failed to update the account information, delete the account, or at least mark the account as disputed on after Plaintiff disputed the account.

59. Upon information and belief, that CCM failed to investigate, never updated the account information, never marked it as disputed, or alternatively knew through the entire attempted collection process that the debt was invalid.

60. All of CCM's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

61. All of CCM's actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

62. Upon information and belief JCH operates within a scheme of failing to bill Medicaid for services until accounts have already been sent to third party debt collectors. Then, even after accounts are paid by Medicaid at a later date, JCH intentionally fails to recall the alleged debt, despite it no longer being owed.

63. Upon information and belief, this practice allows JCH to prey on consumers and recoup double the amount it is owed for services.

64. Upon information and belief, CCM attempts to collect on these debts through a scheme of debt parking to force Plaintiff's to make payments on un-owed debts in order to protect their credit and financial health.

65. Upon information and belief, CCM knows, or remains willfully ignorant, of the status of the accounts by ignoring the paid balances, or by failing to receive any validation on the accounts that it purports to collect.

66. Upon information and belief, this fraudulent scheme has harmed countless Medicaid and Medicare individuals throughout all of JCH's facilities.

67. Defendant JCH exercised control over Defendant CCM's conduct and attempts to collect the alleged debt. See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000); Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508 (S.D.N.Y. 2013); See also, e.g., Plummer, 66 F. Supp. 3d at 493; Fritz v. Resurgent Cap. Servs., LP, 955 F. Supp. 2d 163, 177 (S.D.N.Y. 2013).[6]; Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006); Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011). See also, e.g., Nichols v. Niagara Credit Recovery, Inc., No. 12-cv-1068, 2013 WL 1899947, at *5 (N.D.N.Y. May 7, 2013); Sanchez v. Abderrahman, No. 10 Civ. 3641, 2013 WL 8170157, at *6 (E.D.N.Y. July 24, 2013).

68. Defendant JCH is vicariously liable for Defendant CCM's actions as they had agency over determining the amount of the alleged debt that the debt collector, Defendant CCM, was allowed to attempt to collect on their behalf.

69. Defendant CCM would not legally be allowed to collect the alleged debt on behalf of JCH if Defendant JCH had not in fact given them approval or agency to act on their behalf to collect in a manner JCH had knowingly approved or permitted.

70. Upon information and belief, Defendant JCH gave Defendant CCM the green light, and thus agency, to attempt to collect the alleged debt in the manner in which CCM did.

71. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the CCM, and by extension JCH.

72. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by CCM, and by extension JCH.

73. Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by CCM and JCH.

74. In fact, Plaintiff has been denied for a home loan due to the illegal actions of CCM and JCH.

75. Plaintiff has suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

76. Plaintiff was forced to hire a credit repair agency in order to assist her credit that had been wrongly destroyed.

77. Defendants' action has created an appreciable risk of harm to the underlying concrete interests that Congress sought to protect in creating the FDCPA.

78. Plaintiff would have pursued a different course of action had Defendants not violated the statutory protections created by Congress.

79. Plaintiff attempted to pursue her rights yet was left with no resolution based on Defendants' actions.

80. Defendants' denial of Plaintiff's rights caused harm in the form of impaired credit, no plausible way of ascertaining the status of her debt in order to make a rational determination as to

how to proceed and forcing her to make financial decisions based on misinformation and engage in financial planning based on incorrect facts.

81. Plaintiff's injury-in-fact is fairly traceable to the challenged representations of Defendants.

82. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

## CLASS ALLEGATIONS

83. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84. The identities of all class members are readily ascertainable from the records of Diversified and those business and governmental entities on whose behalf it attempts to collect debts.

85. Excluded from the Plaintiff's Class is JCH, CCM and all officers, members, partners, managers, directors, and employees of JCH, CCM, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

86. There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether JCH and CCM's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act and Fair Credit Reporting Act.

87. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

88. The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

89. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a. **Numerosity**: The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

    b. **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether CCM and JCH's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

    c. **Typicality**: The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendants' common uniform course of conduct complained of herein.

    d. **Adequacy**: The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

    e. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number

of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendants who, upon information and belief, collects debts throughout the United States of America.

90. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the Fair Debt Collection Practices Act, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

91. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

92. Further, JCH and CCM has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

93. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

94. This cause of action is brought on behalf of Plaintiff and the members of a class.

95. The class consists of all persons whom Defendants' records reflect resided in the State of Illinois and who (a) were seen by a JCH facility; (b) who were Illinois Medicaid or Medicare

recipients; and (c) who are currently recipients of debt collection attempts regarding those medical bills; (d) the Plaintiff asserts that these collection attempts are in violation of 15 U.S.C. §§ 1692e, 1692e(10), 1692d, and 1692f for failing to correctly identify the name of the creditor to whom the debt is owed.

### Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

96. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

97. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

98. Because Plaintiff disputed the debt, Defendants, when choosing to contact the consumer reporting agencies, was obligated to inform them of the disputed status of the account. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

99. Defendants used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debt was disputed and by reporting a an alleged debt known to be invalid in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated,

865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

100. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. See, e.g., Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (citing Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994)).

101. Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

102. Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

103. Defendants' communications with Plaintiff were deceptive and misleading.

104. Defendants used unfair and unconscionable means to attempt to collect the alleged debt.

105. Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

106. Defendants' failure to mark a debt as disputed it knows or should know is disputed violates § 1692e, 1692e(8) of the FDCPA.

107. Defendants' failure to remove an invalid and incorrect debt from the credit report violates § 1692e, 1692e(8) of the FDCPA.

108. Defendants' conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

109. Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

110. Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendants' conduct.

111. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. Defendants' false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

112. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, a loss of a home loan, fear, stress, mental anguish, emotional stress and acute embarrassment.

113. Defendants' violation of § 1692e of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

    A.    Declare that Defendants' debt collection actions violate the FDCPA;

    B.    Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

    C.    Grant other such further relief as deemed just and proper.

### Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse, False or Misleading Representation

114. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

115. Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

116. Defendants' communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

117. Defendants' continued to attempt to collect on a known incorrect debt in order to harass Plaintiff and force her to pay an un-owed debt.

118. Defendants' violation of § 1692d of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

    A.    Declare that Defendants' debt collection actions violate the FDCPA;

    B.    Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendants' for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

    C.    Grant other such further relief as deemed just and proper.

### Count III: Violations Of § 1692f Of The FDCPA – Unfair Practices

119. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

120. Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

121. Defendants' communications with Plaintiff were deceptive and misleading.

122. Defendants' used unfair and unconscionable means to attempt to collect the alleged debt.

123. By committing Medicaid fraud and attempting to collect on debts it knew Medicaid had already paid in full, it acted unconscionably.

124. Defendants' violation of § 1692f of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated,, prays that this Court:

D. Declare that Defendants' debt collection actions violate the FDCPA;

E. Enter judgment in favor of Plaintiff Toni Jackson, individually and on behalf of all others similarly situated, and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

F. Grant other such further relief as deemed just and proper.

### Count IV: Violation Of 15 U.S.C. § 1681s-2(B)(1) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

125. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

126. Defendants violated 15 U.S.C. § 1681s-2(b)(1)(C) in that they failed to report the notation of the disputed information to the consumer reporting agencies.

127. Defendants violated 15 U.S.C. § 1681s-2(b)(1)(D) in that they failed to report to the credit bureaus the information was being disputed.

128. Defendants violated 15 U.S.C. § 1681s-2(b)(1)(E) in that they failed to appropriately modify, delete, or permanently block the reporting of the item information.

129. Defendants caused injury in fact, by causing, credit denials caused by false credit reporting, damage to credit reputation, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

130. Defendants have done so willfully, or in the alternative, negligently.

131. Plaintiffs are entitled to actual damages, punitive damages, attorney's fees and costs pursuant 15 U.S.C. § 1681n for Defendants' willful violation.

132. Alternatively, Plaintiff is entitled to actual damages, attorney's fees and costs if the violation is negligent, pursuant to 15 U.S.C. §1681o for Defendants' negligent violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated,, prays that this Court:

A. Declare that Defendants' credit reporting actions violate the FCRA;

B. Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendants, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA; and

C. Grant other such further relief as deemed just and proper.

## JURY DEMAND

133. Plaintiff demands a trial by jury on all Counts so triable.

Dated: July 22, 2021

Respectfully Submitted,

**HALVORSEN KLOTE**

By:   /s/ Samantha J. Orlowski

Samantha J. Orlowski, #6334968
Gregory M. Klote, #6319301
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
sam@hklawstl.com
greg@hklawstl.com
joel@hklawstl.com
*Attorney for Plaintiff*