IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TONI JACKSON, individually
and on behalf of all others similarly
situated,

   Plaintiff,

v.

JERSEY COMMUNITY HOSPITAL,
CONSUMER COLLECTION
MANAGEMENT, INC., and
JOHN DOE ENTITIES,

   Defendants.

Case No. 3:21-CV-00848-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendant Jersey Community Hospital ("JCH") (Doc. 29). Plaintiff Toni Jackson filed a timely response (Doc. 36), to which JCH filed a timely reply (Doc. 40). Also pending before the Court is a Motion for Judgment on the Pleadings as to Count VII filed by Defendant Consumer Collection Management, Inc. ("CCM") (Doc. 31), to which Jackson filed a timely response (Doc. 37).

Initially, JCH moved to dismiss Counts I through VI with prejudice and Counts VII and VIII without prejudice. Jackson and JCH have since filed a Stipulation of Dismissal with prejudice as to Counts I through VI pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) (Doc. 33). Such a stipulation is effective immediately upon filing and does not require judicial approval. *See, e.g., Jenkins v. Village of Maywood,* 506 F.3d 622,

624 (7th Cir. 2007). Accordingly, as Counts I through VI against JCH have been dismissed with prejudice, the Court will only evaluate JCH's motion to dismiss for Counts VII and VIII. CCM's Motion for Judgment on the Pleadings substantially overlaps with JCH's motion as to Count VII.

## BACKGROUND

Imagine applying for a home loan only to discover a demerit on your credit report. Plaintiff Toni Jackson need not imagine. Much to her surprise, a lingering medical debt appeared on her credit report tanking her credit score and preventing her from obtaining a home loan. Curiously, she never received a warning or notice of any such debt. In fact, her medical bill, accrued after receiving treatment at JCH's facility, had already been paid in full by Medicaid. Nevertheless, CCM reported Jackson's purportedly unresolved debt unbeknownst to her. After this alarming discovery, Jackson informed CCM, as did a Medicaid representative, that the supposed debt had already been paid. Despite this information, CCM failed to update or delete the account information or mark the account as disputed. Jackson alleges that both JCH and CCM unlawfully attempted to generate revenue by double collecting from patients on medical bills previously paid by insurance. What's more, Jackson alleges that JCH and CCM were in cahoots to craft an enterprise shaking down many more patients just like her.

## LEGAL STANDARD

### I.   Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d

635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## II.   Motion for Judgment on the Pleadings – Federal Rule of Civil Procedure 12(c)

Pursuant to Rule 12(c), a party is permitted to move for judgment after the parties have filed the complaint and answer. FED. R. CIV. P. 12(c); *Northern Indiana Gun & Outdoors Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998). Similar to a motion to dismiss under Rule 12(b), "[t]o survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face." *Wagner v. Teva Pharmaceuticals USA, Inc.*, 840 F.3d 355, 357-58 (7th Cir. 2016) (internal quotations omitted). Likewise, under Rule 12(c), a court draws all reasonable inferences and facts in favor of the nonmovant, but need not accept legal assertions as true. *Id.* at 358.

A court can only grant a Rule 12(c) motion when "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Indiana Gun,* 163 F.3d at 452 (quoting *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). A district court may not look beyond the pleadings, and all

uncontested allegations to which the parties had an opportunity to respond are taken as true. *Flora v. Home Federal Savings and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982).

DISCUSSION

## I.       Count VII – Jackson's RICO Claim against JCH and CCM

Generally, a complaint must provide "a short and plain statement of the claims showing that the pleader is entitled to relief" sufficient to provide the defendant fair notice of the claim. FED. R. CIV. P. 8(a)(2); *Twombly,* 550 U.S. at 555. But allegations of fraud are subject to a higher pleading standard. Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." FED. R. CIV. P. 9(b). Essentially, the "who, what, when, where, and how" of the fraud must be sufficiently alleged. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The elevated pleading standard ensures that the plaintiff "conduct[s] a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014). More specifically, a plaintiff must plead "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* Rule 9(b) serves the purposes of protecting a defendant's reputation, minimizing fishing expeditions, and providing notice to the adverse party. *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This heightened pleading standard applies to fraud claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.*

Page 4 of 12

Under Section 1962(c) of RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim pursuant to Section 1962(c), a plaintiff must allege a defendant "engaged in the (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (citing *Salinas v. United States*, 522 U.S. 52, 62 (1997)).

Turning first to the Amended Complaint, Jackson alleges that after medical treatment at JCH's facility on August 28, 2018, JCH sent her medical balance to collections without attempting to procure the funds from Medicaid (Doc. 13, ¶ 40, 43). On May 2, 2019, Medicaid paid the remaining balance, yet JCH continued to attempt to procure payment directly from her (*Id.* at ¶ 44, 46). JCH contracted with CCM to collect on the paid debt, likely in January 2019[1] (*Id.* at ¶ 47; Doc. 36, p. 10). From this point, CCM purportedly began reporting on Jackson's credit multiple times over the course of two years (Doc. 13, ¶ 50). Jackson discovered the mistaken reporting in March 2021 (*Id.* at ¶ 53). A Medicaid representative explained to both JCH and CCM that Medicaid had already paid the remaining balance (*Id.* at ¶ 57, 58). CCM failed to remove the improperly reported debt and persisted in reporting on Jackson's credit (*Id.* at ¶ 56, 59). JCH never notified CCM that the debt was satisfied (*Id.* at ¶ 69). Based on this incident, Jackson

---

[1] This date is mentioned only in Jackson's response to JCH's Motion to Dismiss, not in the Amended Complaint itself (Doc. 36, p. 10).

proceeds to allege that, on information and belief, JCH and CCM, along with "John Doe Entities," repeat this practice of double collecting on previously paid accounts to generate illegal revenue (*Id.* at ¶ 71-77, 81-89).

JCH and CCM argue that Jackson's Amended Complaint contains threadbare recitations of the elements of a RICO claim and conclusory allegations, which are not entitled to the assumption of truth usually afforded at the pleading stage. Both primarily argue that Jackson fails to satisfy the particularity requirement of Rule 9(b) and to show a pattern of racketeering activity.

First, a pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Because Congress enacted RICO not out of concern for a sporadic fraudulent act, but rather long-term conduct, a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a distinct threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239-40 (1989). These principles form the basis for the "continuity plus relationship" test. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019). The relationship prong is satisfied by acts of criminal conduct close in time and character, undertaken for similar purposes, or involving the same or similar victims, participants, or means of commission. *Id.* To substantiate the continuity prong, a pleading must "(1) demonstrat[e] a close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Id.* (quoting *Roger Whitmore's Auto Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 673

(7th Cir. 2005)).

Here, to demonstrate a pattern of racketeering activity, Jackson seeks to aggregate each attempt to collect on her paid debt by JCH and CCM. Jackson states that the predicate acts are multiple reports on her credit from May 2, 2019, to April 7, 2021, amounting to wire fraud, and, moreover, communications between JCH and CCM initiating the fraudulent collection which involve mail or wire fraud. As noted above, such predicate acts are subjected to the Rule 9(b) pleading standard, and Jackson must plead these acts with particularity. *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 729 (7th Cir. 1998). Given this heightened pleading standard, along with Congress's intent that RICO claims encompass a clear pattern of racketeering activity, the Seventh Circuit cautions that courts should not look favorably on many instances of mail and wire fraud to form a pattern. *Menzies*, 943 F.3d at 338; *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) ("[M]ail and wire fraud allegations are unique among predicate acts because the multiplicity of such acts may be no indication of the requisite continuity of the underlying fraudulent activity.").

In support of her position, Jackson cites to *H.J. Inc. v. Northwestern Bell Telephone, Inc.,* where the Supreme Court discusses a hypothetical "hoodlum" who offers insurance to neighborhood storekeepers to keep them safe and then collects their premiums each month. 492 U.S. at 240. This illustration establishes that predicate acts may be small and occur closely together in time, but as such, can include a specific threat of repetition satisfying the requirements of relationship and continuity. *Id.* This example is inapposite. Within this basic hypothetical, the schemer performed the same fraud on multiple

storeowners in the same fashion to collect monthly premiums and the acts did not involve mail or wire fraud. Here, Jackson only alleges her own circumstances to implicate the broader fraudulent scheme. The Court declines to adopt her perspective that multiple reports on her credit, essentially some instances of wire fraud, form a pattern and demonstrate the requisite relationship and continuity. The Seventh Circuit explicitly instructs against this view. *Menzies*, 943 F.3d at 338.

Even if these instances in the aggregate did satisfy the relationship prong, Jackson fails to allege her claims with the appropriate particularity. The Amended Complaint is devoid of vital information, such as the time, place, and content of the purported fraudulent reports or misrepresentations. As Jackson relies on each instance of reporting to credit bureaus to form predicate acts, she fails to allege how many reports occurred and when, as well as the content of each report or communication in attempting to recover the already paid debt. She also fails to allege when JCH contracted CCM to collect on Jackson's medical debt. Jackson's response to JCH's motion to dismiss states that JCH contracted CCM on or around January 2019, which interestingly, is before the debt had been fully paid. This detail disrupts the scheme that Jackson describes, that JCH nefariously contracted with CCM by means of wire fraud, when it appears the defendants contracted while a legitimate debt existed. In any event, the Amended Complaint does not contain even this information regarding timing. As to all other activity, Jackson solely relies on information and belief as support.

Moving to the continuity prong, Jackson's allegations are equally insufficient. Jackson argues an open-ended continuity theory that, because JCH and CCM regularly

conduct their legitimate businesses by treating and billing patients, billing insurance, and collecting on medical debts, the threat of repetition of their scheme is apparent. While open-ended continuity can be demonstrated with predicate acts that form part of a defendant's ongoing, regular business, it is not enough to base such a theory on just one prior predicate act and an otherwise unsupported assertion that criminal activity will continue into the future. *Menzies*, 943 F.3d at 337-38. Jackson's Amended Complaint "explicitly presents a distinct and non-recurring scheme with a built-in termination point and provides no indication that the perpetrators have or will engage in similar misconduct." *Gamboa v. Valez*, 457 F.3d 703, 709 (7th Cir. 2006). The Seventh Circuit deems such allegations as simply insufficient to allege continuity under RICO.

Diving deeper in the continuity analysis, relevant factors for consideration include the number and variety of predicate acts, the length of time over which defendant committed the acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). Jackson's allegations, even construed in her favor, do not state a plausible claim as to this element. First, Jackson alleges that the attempts to collect on her paid debt occurred over a two-year time period. Again, these allegations do not offer any detail as to when during this two-year period false reporting occurred, how many times CCM reported on her credit, or what JCH's role entailed during that time. Two years could be long enough to show continuity, but Jackson alleges without specificity that CCM reported on her credit, and both CCM and JCH attempted to collect her previously paid debt during this time. This does not convey a sufficient number or variety of predicate

acts to support a RICO claim. The only identifiable victim alleged with particularity is Jackson herself. Based on information and belief, Jackson estimates that there could be many other victims, but aside from these vague assertions in the Amended Complaint, she provides no further detail. Jackson only alleges her own injuries including trouble securing a home loan, embarrassment, and pain and suffering, which are serious, but ultimately stem from the main injury of her damaged credit. Considering all these factors, Jackson has not sufficiently plead continuity as required to establish a pattern of racketeering activity.

For these reasons, Jackson's RICO claim is dismissed without prejudice, and she may amend her complaint if she is able to do so.[2]

## II.     Count VIII – Jackson's ICFA Claim against JCH

Jackson also alleges that JCH violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). To state a claim under ICFA, a plaintiff must demonstrate: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta*, 761 F.3d at 739; 815 ILCS 505/2. Generally, the ICFA prohibits unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact, with intent that others rely upon such action, representation, or

---

[2] Jackson asks for leave to amend her Complaint with an affidavit (Doc. 36, p. 12), however, considering the Court's discussion, the affidavit alone will not cure the pleading deficiencies for her RICO claim.

omission. 815 ILCS 505/2. The heightened Rule 9(b) pleading standard also applies to this claim as it relates to deception, fraud, and misrepresentation.

JCH contends, principally, that Jackson failed to allege the misrepresentation from JCH on which she relied. The Court agrees. The Amended Complaint contains no such allegation. Jackson argues that JCH submitted and accepted payment from Jackson's insurance and represented the balance as paid in full (Doc. 13, ¶ 44-45). But the Amended Complaint simply states that Medicaid paid the balance and "[a]t that point in time, Plaintiff no longer owed any monetary funds to JCH." There is no allegation detailing a representation at all, let alone how JCH represented the information or what the representation included. In consumer fraud actions in Illinois, the plaintiff must actually be deceived by a statement or omission. *See O'Connor v. Ford Motor Company*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (citing *De Bouse v. Bayer*, 235 Ill.2d 544, 337 Ill.Dec. 186, 922 N.E.2d 309, 316 (2009)). An omission, under the ICFA, must be from a communication, rather than a general failure to disclose. *Id.* Here, Jackson does not allege any particular communications or statements from JCH that contain material misrepresentations or omissions. As such, she fails to properly plead the first element of her ICFA claim. For that reason, the Court dismisses Count VIII against JCH for failure to state a claim. The Court grants Jackson leave to amend her complaint as to this claim as well.

## Conclusion

For these reasons, the Court **GRANTS** the Motion to Dismiss filed by Defendant Jersey Community Hospital (Doc. 29) and the Motion for Judgment on the Pleadings filed by Defendant Consumer Collection Management, Inc. (Doc. 31) to the extent that Counts

VII and VIII are **DISMISSED.** Jackson is granted leave to amend her complaint on or before **October 19, 2022.**

IT IS SO ORDERED.

DATED:    September 28, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**