### THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | |
|---|---|
| TONI JACKSON, individually and on behalf of all others similarly situated, | ) ) **SECOND AMENDED CLASS ACTION** |
| | ) **COMPLAINT** |
| Plaintiff, | ) |
| v. | ) Case No.: 3:21-cv-00848-NJR |
| | ) |
| JERSEY COMMUNITTY HOSPITAL | ) |
| | ) |
| & | ) |
| | ) |
| CONSUMER COLLECTION MANAGEMENT, INC. | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

### SECOND AMENDED COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Toni Jackson, individually and on behalf of all others similarly situated, by and through the undersigned counsel, and for her Second Amended Complaint against Defendants, Jersey Community Hospital ("JCH") and Consumer Collection Management, Inc., ("CCM") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and 815 ILCS 505/2, Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), states as follows:

### JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d).

2.      The court has supplemental jurisdiction over 802 ILCS 502/2 under 28 U.S.C. § 1367 as all claims stated herein arise out of the same case and controversy.

3.      Venue is proper because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

1

4.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

6.      Plaintiff resides in the city of Fidelity, a part of Jersey County, Illinois 62030.

7.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in Jersey County, Illinois 62030, making this a proper venue under 28 U.S. Code

§ 1391(b)(2).

8.      Defendant JCH, an Illinois corporation headquartered in Jerseyville, Illinois practices is incorporated and domiciled in this venue and thus subject to this Court's jurisdiction.

9.      Defendant JCH operates as a medical provider, wherein individuals receive medical services at its facilities and JCH then charges insurance and individuals.

10.     Defendant CCM, a Missouri corporation headquartered in St. Louis, Missouri practices as a debt collector throughout the country, including Illinois. Defendant CCM is registered to transact business within the state of Illinois and has a registered agent within the state, in this district and venue.

11.     Defendant CCM attempts to collect alleged debts throughout the state of Illinois, including in Jersey county.

12.     Defendant CCM has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

13.     Defendants have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Jersey county and Defendant CCM attempts to collect alleged debts throughout the state of Illinois.

14.      As Defendant CCM knowingly attempted to collect on a debt allegedly incurred in Jerseyville, Illinois, it and thus has sufficient minimum contacts with this venue, venue is additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

15.     Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

16.     Defendant CMM's collection activities violated the FDCPA.

17.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

18.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at

*3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

19.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

20.     Plaintiff has suffered a concrete and cognizable harm due to the actions of Defendants.

## PARTIES

21.     Plaintiff, Toni Jackson (hereafter "Plaintiff"), is a natural person currently residing in the state of Illinois.

22.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

23.     Defendant JCH is an Illinois company engaged in the business of selling medical services in this state with its principal place of business located at 400 Maple Summit Road, Jerseyville, Illinois 62052.

24.     Defendant JCH is engaged in the business of a selling medical services by billing insurance and individuals for purported services.

25.     Defendant CCM is a Missouri company engaged in the business of collecting debts, using mail and telephone in this state with its principal place of business located at 2333 Grissom Drive, Suite 100, St. Louis, Missouri 63146.

26.     CCM is engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

27.     CCM regularly collects or attempts to collect alleged defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

28.     John Doe Entities are entities that regularly attempt to collected on alleged defaulted consumer debts due or asserted to be due to another, and are therefore "debt collectors" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

4

29.    John Doe Entities are entities who service alleged debts for Defendant JCH by attempting to collect on the alleged debts through methods including, but not limited to, phone, mail, electronic means, and credit reporting.

30.    Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC are "consumer reporting agencies that compile and maintain files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). These companies regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a.    Public record information; and

b.    Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

31.    Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than Defendant CCM.

32.    On or before April 12, 2018, Defendant JCH requested Plaintiff's insurance information communicating and representing to Plaintiff that Defendant JCH would bill Plaintiff's health insurance for medical services.

33.    Plaintiff provided her medical insurance information, which was through a Medicaid plan, Meridian Health Insurance.

34.    Every time plaintiff would receive medical services from Defendant JCH, Defendant JCH requested Plaintiff's insurance information. After receiving Plaintiff's insurance information, Defendant JCH would communicate and represent to Plaintiff that Defendant JCH would bill Plaintiff's health insurance for medical services.

35.     At that time, Plaintiff had Medicaid insurance. Under Plaintiff's plan, Defendant JCH would be entitled the contractual amount only.

36.     On or about August 28, 2018, Plaintiff went to Defendant JCH's facility for medical treatment.

37.     Defendant JCH requested Plaintiff's health insurance information at the August 28, 2018, visit.

38.     Plaintiff provided Defendant JCH with her Medicaid insurance information at the time of treatment.

39.     Defendant JCH communicated, represented, and/or promised to Plaintiff that Defendant JCH would bill Plaintiff's health insurance for medical services.

40.     Plaintiff has Medicaid insurance due to the fact that she has little to no income to afford medical services.

41.     Defendant JCH communicated to Plaintiff and others similar situated that Defendant JCH accepted Medicaid health plans.

42.     Plaintiff and others similarly situated go to Defendant JCH because they promise to accept and bill their Medicaid plans so they won't have to pay for medical services out of their own pocket.

43.     After August 28, 2018, Defendant JCH failed to live up to its promise to Plaintiff and never billed Plaintiff's Medicaid health insurance.

44.     Defendant JCH sent communications in the form of statement notices to Plaintiff for an unpaid balance of $321.00 for medical services from the August 28, 2018, date of service to Plaintiff on September 16, 2018, October 14, 2018, November 11, 2018, and December 9, 2018.

45.     Plaintiff assumed the communications were a mistake since Plaintiff provided her health insurance information on August 28, 2018, and many times before to Defendant JCH, and Defendant JCH communicated and represented to Plaintiff that it would bill Plaintiff's insurance.

46.     On January 9, 2019, Defendant JCH wrote off the $321.00 balance from Plaintiff's August 28, 2018, date of service with Defendant JCH as a "bad debt write-off."

47.     On or about January 29, 2019, Defendant JCH sent the $321.00 account balance from Plaintiff's August 28, 2018, date of service with Defendant JCH to Defendant CCM to collect the amount.

48.     That Defendant CCM acted as an agent of Defendant JCH and Defendant JCH the principal of Defendant CCM.

49.     That as a principal, Defendant JCH controlled or directed Defendant CCM's actions on behalf of Defendant JCH.

50.     That Defendant CCM began reporting to Experian and other credit agencies in January 2019.

51.     Credit reporting is a "communication" under the FDCPA and ICFA.

52.     That Defendant CCM began reporting to Experian before the initial "dunning letter" expired.

53.     This practice by Defendant CCM, referred to as "debt parking," violates the FDCPA. See Federal Trade Commission v. Midwest Recovery Systems, LLC et. al, Case 4:20-cv-01674, ECF Doc. 2, (E.D.Mo. November 25, 2020).

54.     That Defendant CCM began sending collection notices to Plaintiff alleging that she owed $321.00 from Plaintiff's August 28, 2018, date of service with Defendant JCH.

55.     That collection notices are a form of "communication" under the FDCPA and ICFA.

56.    On or about April 19, 2019, Defendant JCH billed Plaintiff's Medicaid health insurance.

57.    On or about May 2, 2010, Plaintiff's Medicaid health insurance paid Defendant JCH $321.00 in full for Plaintiff's medical services from Defendant JCH for the August 28, 2018, date of service.

58.    That Defendant JCH knew it had received payment from Plaintiff's Medicaid health insurance in full but continued to direct Defendant CCM to collect an invalid debt from Plaintiff.

59.    That Defendant CCM continued collection activities including credit reporting on Plaintiff's credit report with Experian and other consumer reporting agencies for the invalid debt on Defendant JCH's behalf.

60.    That Defendant CCM reported the invalid debt on Plaintiff's credit report from January 2019 to May 2021.

61.    Defendant JCH continued to communicate with Plaintiff through its agent Defendant CCM that Plaintiff owed a valid debt even after Defendant JCH was paid in full and knew the debt was invalid.

62.    That during Defendant JCH's communications with Plaintiff through its agent Defendant CCM that Plaintiff owed a valid debt, Defendant JCH concealed and omitted the fact to Plaintiff that the alleged debt was invalid and Defendant JCH had already received payment.

63.    That Defendant JCH represented to Plaintiff that it would accept Plaintiff's health insurance and bill the insurance for the August 28, 2018, date of service, only to attempt to collect on an invalid debt.

64.    That Defendant JCH falsely promised to Plaintiff it would bill Plaintiff's health insurance and Plaintiff would not owe anything, however, Defendant JCH billed Plaintiff's health

insurance, received payment in full, and continued to collect an invalid debt after promising that Plaintiff would not owe anything.

65.    That Defendant JCH intended for Plaintiff to rely on the debt being a valid debt and pay Defendant JCH more money than Defendant JCH was owed.

66.    That Defendant JCH intended for Plaintiff to rely on Defendant JCH's representation that it would bill Plaintiff's health insurance, so Defendant JCH could double collect against Plaintiff.

67.    That due to Defendant JCH and Defendant CCM's deceptive and unfair practices, Plaintiff attempted in 2020 to apply for a home loan only to get denied three times due to collection account from Defendant JCH through Defendant CCM.

68.    That due to Defendant JCH and Defendant CCM's deceptive and unfair practices, the continued collection of the invalid debt caused insurmountable damage to Plaintiff's credit score for over two years.

69.    That due to Defendant JCH and Defendant CCM's deceptive and unfair practices, Plaintiff was forced to pay money to a credit repair company to help fix Plaintiff's credit score.

70.    That due to Defendant JCH and Defendant CCM's deceptive and unfair practices, Plaintiff suffered emotional anguish.

71.    That due to Defendant JCH and Defendant CCM's deceptive and unfair practices, Plaintiff was unable to move from her current residence and forced to live in subpar conditions.

72.    The alleged debt was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

73.    That all of Defendant JCH's conduct was through trade or commerce as medical services for money are trade or commerce under 815 ILCS 505/2.

74.    Voluntary credit reporting is a "communication" as defined by 15 U.S.C. § 1692a(2).

75.    After failing to obtain a home loan, Plaintiff disputed with Defendant CCM that the alleged debt was improper, as her Medicaid insurance paid the required and contractual amount.

76.    Defendant CCM failed to remove the alleged debt.

77.    Plaintiff then had her Medicaid representative explain to Defendant CCM that these alleged debts were improper because Medicaid had paid the balance in full based on its contractual obligations.

78.    Defendant CCM knew, or should have known, that the alleged debt was incorrect in its entirety.

79.    Once Plaintiff disputed the debt, Defendant CCM was required to mark the account as disputed if it chose to voluntarily report to the Credit Reporting Agencies.

80.    That Defendant CCM furnished false information to the credit reporting agencies regarding Plaintiff's account despite having actual notice that the accounts were incorrect, and without notifying them the account had been disputed by consumer.

81.    That Defendant CCM failed to update the account information, delete the account, or at least mark the account as disputed on after Plaintiff disputed the account.

82.    That Defendant CCM has collected on invalid debts on behalf of Defendant JCH against Plaintiff and others similarly situated.

83.    That Defendant CCM has reported to credit reporting agencies alleged debts before the expiration of the "dunning" period against Plaintiff and others similarly situated.

84.    All of Defendant CCM's actions under the FDCPA complained of herein occurred within one year of the date of the original complaint filed in this case.

85.    That Defendant JCH uses similar deceptive or unfair acts as mentioned above with the intent that people similarly situated to Plaintiff rely on the said acts in order for Defendant to collect more money.

86.    Defendant JCH exercised control over Defendants CCM's conduct and attempts to collect the alleged debts. See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000); Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508 (S.D.N.Y. 2013); See also, e.g., Plummer, 66 F. Supp. 3d at 493; Fritz v. Resurgent Cap. Servs., LP, 955 F. Supp. 2d 163, 177 (S.D.N.Y. 2013).[6]; Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006); Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011). See also, e.g., Nichols v. Niagara Credit Recovery, Inc., No. 12-cv-1068, 2013 WL 1899947, at *5 (N.D.N.Y. May 7, 2013); Sanchez v. Abderrahman, No. 10 Civ. 3641, 2013 WL 8170157, at *6 (E.D.N.Y. July 24, 2013).

87.    Defendant CCM would not legally be allowed to collect the alleged debts on behalf of Defendant JCH if Defendant JCH had not in fact given them approval or agency to act on their behalf to collect in a manner JCH had knowingly approved or permitted.

88.    Defendant JCH gave Defendants CCM the green light, and thus agency, to attempt to collect the alleged debts in the manner in which Defendant CCM did.

89.    Plaintiff, as well as similarly situated individuals, suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of Defendant CCM, and by extension Defendant JCH.

90.    Plaintiff, as well as similarly situated individuals, suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by Defendant CCM, and by extension Defendant JCH.

91.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by Defendant CCM and Defendant JCH.

92.    In fact, Plaintiff has been denied for multiple home loans due to the illegal actions of Defendant JCH and Defendant CCM.

93.     Plaintiff, as well as similarly situated individuals, suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

94.     Plaintiff was forced to hire a credit repair agency in order to assist her credit that had been wrongly destroyed.

95.     Defendant CCM's actions has created an appreciable risk of harm to the underlying concrete interests that Congress sought to protect in creating the FDCPA.

96.     Plaintiff would have pursued a different course of action had Defendants not violated the statutory protections created by Congress.

97.     Plaintiff attempted to pursue her rights yet was left with no resolution based on Defendant JCH and Defendant CCM's actions.

98.     Defendants' denial of Plaintiff's rights caused harm in the form of impaired credit, no plausible way of ascertaining the status of her debt in order to make a rational determination as to how to proceed and forcing her to make financial decisions based on misinformation and engage in financial planning based on incorrect facts.

99.     Plaintiff's injury-in-fact is fairly traceable to the challenged representations of Defendants.

100.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

## CLASS ALLEGATIONS

101.    This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

102.    The identities of all class members are readily ascertainable from the records of Defendant JCH and Defendant CCM.

103.    Excluded from the Plaintiff's Class is Defendant JCH, Defendant CCM, and all officers, members, partners, managers, directors, and employees of Defendant JCH Defendant CCM, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

104.    There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether Defendant JCH and Defendant CCM's communications with the Plaintiff and other similarly situated individuals, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act.

105.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

106.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

107.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a.        **Numerosity**: The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

b.        **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether Defendant CCM and Defendant JCH's actions and communications with the Plaintiff and other similarly situated individuals, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act.

c.        **Typicality**: The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant JCH and Defendant CCM's common uniform course of conduct complained of herein.

d.        **Adequacy**: The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

e.        **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of

inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendants who collects debts throughout the United States of America.

108.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the Fair Debt Collection Practices Act and Illinois Consumer Fraud and Deceptive Practices Act, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

109.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

110.    Further, Defendant JCH and Defendant CCM have acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

111.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

112.    This cause of action is brought on behalf of Plaintiff and the members of a class.

113.    The class consists of all persons whom Defendants' records reflect resided in the State of Illinois and who (a) were seen by a JCH facility; (b) who were Illinois Medicaid or Medicare recipients; and (c) who are currently recipients of debt collection attempts regarding those medical bills; (d) the Plaintiff asserts that these collection attempts are in violation of the FDCPA,   and 815 ILCS 505/2.

## Count I: Violations Of § 1692e(2) Of The FDCPA
**(Defendant CCM)**

114.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

115.    Section 1692e(2) of the FDCPA prohibits a debt collector from falsely representing the character, amount, or legal status of any debt.

116.    Defendant CCM represented a debt to be owed by Plaintiff.

117.    Defendant CCM falsely represented the amount and status of the alleged debt, in violation of § 1692e(2).

118.    Defendant CCM's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, e.g., Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (citing Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994)).

119.    Defendant CCM violated the Plaintiff's right not to be the target of misleading debt collection communications.

120.    Defendant CCM violated the Plaintiff's right to a truthful and fair debt collection process.

121.    Defendant CCM's communications with Plaintiff were deceptive and misleading.

122.    Defendant CCM's used unfair and unconscionable means to attempt to collect the alleged debt.

123.    Defendant CCM's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

124.    Defendant CCM's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

125.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

126.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendant CCM's conduct.

127.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. Defendant CCM's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

128.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, a loss of a home loan, fear, stress, mental anguish, emotional stress and acute embarrassment.

129.    Defendant CCM's violation of § 1692e(2) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

A.    Declare that Defendant CCM's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendant CCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## Count II: Violations Of § 1692e(8) Of The FDCPA
### (Defendant CCM)

130.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

131.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

132.    Because Plaintiff disputed the debt, Defendant CCM, when choosing to contact the consumer reporting agencies, was obligated to inform them of the disputed status of the account. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

133.    Defendant CCM used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debt was disputed and by reporting a an alleged debt known to be invalid in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This

18

standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

134.    Defendant CCM collection communications are to be interpreted under the "unsophisticated consumer" standard. See, e.g., Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (citing Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994)).

135.    Defendant CCM violated the Plaintiff's right not to be the target of misleading debt collection communications.

136.    Defendant CCM violated the Plaintiff's right to a truthful and fair debt collection process.

137.    Defendant CCM's communications with Plaintiff were deceptive and misleading.

138.    Defendant CCM used unfair and unconscionable means to attempt to collect the alleged debt.

139.    Defendant CCM's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant CCM's collection efforts.

140.    Defendant CCM's failure to mark a debt as disputed it knows or should know is disputed violates § 1692e, 1692e(8) of the FDCPA.

141.    Defendant CCM's failure to remove an invalid and incorrect debt from the credit report violates § 1692e, 1692e(8) of the FDCPA.

142.    Defendant CCM's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

143. Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

144. Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendant CCM's conduct.

145. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. Defendants' false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

146. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, a loss of a home loan, damaged credit score, financial insecurity, costs to repair credit, attorney's fees, fear, stress, mental anguish, emotional stress and acute embarrassment.

147. Defendant CCM's violation of § 1692e of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

A.      Declare that Defendant CCM's debt collection actions violate the FDCPA;

B.      Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendant CCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.        Grant other such further relief as deemed just and proper.

## Count III: Violations Of § 1692e(10) Of The FDCPA
**(Defendant CCM)**

148.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

149.    Section 1692e(10) of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

150.    Defendant CCM continued to collect on an invalid debt in an attempt to procure additional funds that were not owed by Plaintiff.

151.    Defendant CCM continued to attempt from Plaintiff for two years after the debt was paid in full. Defendants placed the alleged debt directly to Plaintiff's credit report without first providing her sufficient notice of the alleged debt being serviced by Defendant CCM for Defendant JCH.

152.    Debt parking is misleading and deceptive.

153.    Defendant CCM's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, e.g., Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (citing Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994)).

154.    Defendant CCM violated the Plaintiff's right not to be the target of misleading debt collection communications.

155.    Defendant CCM violated the Plaintiff's right to a truthful and fair debt collection process.

156.    Defendant CCM's communications with Plaintiff were deceptive and misleading.

157.    Defendant CCM used unfair and unconscionable means to attempt to collect the alleged debt.

158.     Defendant CCM's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

159.     Defendant CCM's failure to mark a debt as disputed it knows or should know is disputed violates § 1692e, 1692e(8) of the FDCPA.

160.     Defendants' failure to remove an invalid and incorrect debt from the credit report violates § 1692e, 1692e(8) of the FDCPA.

161.     Defendant CCM's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

162.     Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

163.     Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendant CCM's conduct.

164.     The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. Defendant CCM's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

165.     Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, a loss of a home loan, fear, stress, mental anguish, emotional stress and acute embarrassment.

166.     Defendant CCM's violation of § 1692e of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

A.          Declare that Defendant CCM's debt collection actions violate the FDCPA;

B.          Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendant CCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.          Grant other such further relief as deemed just and proper.

### **Count IV:  Violations Of § 1692d Of The FDCPA – Harassment or Abuse, False or Misleading Representation (Defendant CCM)**

167.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

168.     Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

169.     Defendant CCM's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

170.     Defendant CCM's continued to attempt to collect on a known incorrect debt in order to harass Plaintiff and force her to pay an un-owed debt.

171.     Defendant CCM's violation of § 1692d of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

172.    Plaintiff suffered actual damages as a result of this violation of the FDCPA including, but not limited to, a loss of a home loan, damaged credit score, costs to repair credit, fear, stress, mental anguish, emotional stress, attorney's fees, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

A.          Declare that Defendant CCM's debt collection actions violate the FDCPA;

B.          Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendant CCM for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.          Grant other such further relief as deemed just and proper.

### Count V: Violation Of 815 ILCS 502/2
### (Toni Jackson v. Defendant JCH)

173.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

174.    The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) prohibits unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact, with the intent that others rely upon such action, representation, or omission. 815 ILCS 505/2.

175.    Defendant JCH used deceptive or unfair acts or promises in violation of IFCA in the following ways, to wit:

a. Defendant JCH communicated, represented, and/or promised to Plaintiff that Defendant JCH would bill Plaintiff's health insurance for medical services received on August 28, 2018, but instead sent Plaintiff to collections and continued to collect a debt even after being paid in full;

24

b. Defendant JCH falsely promised and represented to Plaintiff that Defendant JCH would bill Plaintiff's Medicaid health insurance plan through Meridian and Plaintiff would not owe anything, however, Defendant JCH received payment in full, and continued to collect an invalid debt through its agent, Defendant CCM, after promising Plaintiff wouldn't owe anything;

c. Defendant JCH continued to communicate and misrepresent to Plaintiff that Plaintiff owed a valid debt enough after Defendant JCH was paid in full and knew the debt was invalid;

d. That during Defendant JCH's communications with Plaintiff through its agent Defendant CCM that Plaintiff owed a valid debt, Defendant JCH concealed and omitted the fact to Plaintiff that the alleged debt was invalid and Defendant JCH had already received payment; and

e. Such other acts or omission as the discovery might reveal.

176.    That Defendant JCH intended for Plaintiff to rely on Defendant JCH's unfair and deceptive practices that the debt was valid and actually owed to Defendant JCH.

177.    That Defendant JCH intended for Plaintiff to rely on Defendant JCH's unfair and deceptive practices that the debt was valid and pay Defendant JCH more money than Defendant JCH was owed.

178.    That Defendant JCH intended for Plaintiff to rely on Defendant JCH's representation that it would bill insurance so Defendant JCH could double collect against Plaintiff.

179.   As Defendant JCH was charging Plaintiff for a medical service, this occurred in the course of conduct involving trade or commerce.

180.   Plaintiff, due to this fraudulent collection, has suffered actual damages in the form of, but not limited to, damaged credit score, additional rent owed, a loss of a mortgage, cost to repair her credit, lost time, anxiety, mental anguish, cost and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Toni Jackson, individually and on behalf of all others similarly situated, prays that this Court:

A.        Declare that Defendant JCH violated 815 ILCS 502/2.

B.        Enter judgment in favor of Plaintiff Toni Jackson, and all others similarly situated, and against Defendant JCH, for damages, costs, and attorneys' fees; and

C.        Grant other such further relief as deemed just and proper.

## JURY DEMAND

181.        Plaintiff demands a trial by jury on all Counts so triable.

Dated: October 19, 2022

Respectfully Submitted,

**HALVORSEN KLOTE**

By:      /s/ Gregory M. Klote
Gregory M. Klote, #6319301
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
greg@hklawstl.com
joel@hklawstl.com
*Attorney for Plaintiff*

and

Ryan A. Keane, # 6301779
KEANE LAW LLC
7711 Bonhomme Ave, Ste 600
St. Louis, MO 63105
Ph: (314) 391-4700
Fx: (314) 244-3778
ryan@keanelawllc.com
*Attorneys for Plaintiff*

*and*

**GREAT RIVER INJURY LAW**

Joshua R. Evans, #6318288
103 East Pearl
Jerseyville, Illinois 62052
P: (618) 268-5081
office@jevanslegal.com
*Attorneys for the Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The following parties have been notified via the Court's electronic filing system on Wednesday, October 19, 2022:

David P. Niemeier
Molly R. Batsch
Greensfelder, Hemker & Gale, P.C. – St. Louis
10 South Broadway
Suite 200
St. Louis, MO 63102
314-241-9090
dpn@greensfelder.com
mrb@greensfelder.com
Attorneys for Defendant Jersey Community Hospital

Patrick D. Newman
Bassford Remele P.A.
100 South 5th Street
Suite 1500
Minneapolis, MN 55402
612-333-3000
pnewman@bassford.com

/s/ Gregory M. Klote
_____

27